COMMONWEALTH of Pennsylvania, Appellant

v.

G.Y., Appellee.

Superior Court of Pennsylvania.

Submitted Dec. 17, 2012.

Filed Jan. 9, 2013.

Stacy P. Miller, District Attorney, Bellefonte, for Commonwealth, appellant.

Ronald McGlaughlin, State College, for appellee.

BEFORE: FORD ELLIOTT, P.J.E., PANELLA, and ALLEN, JJ.

OPINION BY ALLEN, J.:

The Commonwealth appeals from the trial court's grant of PCRA relief to G.Y. After careful review, we reverse and reinstate the judgment of sentence.

We have gleaned the following facts from our review of the record. J.Y., G.Y.'s son, testified that his parents worked for a cleaning company. N.T., 2/1/05, at 63–64. J.Y. testified that when he was approximately 5 to 6 years old, G.Y. touched him "in a way [J.Y.] didn't like" while they were both at the cleaning company. *Id.* at 64–65. J.Y. stated that while he was using the restroom at the cleaning company, G.Y. "came in, pulled down [G.Y.'s] pants and told [J.Y.] to suck [G.Y.'s] penis." *Id.* at 67. J.Y. complied and placed his mouth on G.Y.'s penis for "about two or three minutes." *Id.* at 68–69. According to J.Y., G.Y. then ejaculated into a handkerchief. *Id.* at 69–70. J.Y. told his mother, S.Y. ("S.Y." or "Mrs. Y."), what had occurred, and she replied that G.Y. "wouldn't do that because he's your father." *Id.* at 70. J.Y. further testified that when he was approximately 12 to 13 years old, and living in Pleasant Gap, Pennsylvania with his family, G.Y. again asked him to "suck" G.Y.'s penis. *Id.* at 72.

J.Y. admitted that he wrote "a statement for the defense's investigator in May of 2004" recanting his allegations that G.Y. molested him. *Id.* at 84–87. J.Y. explained he was "pressured" to recant his abuse allegations by his parents, and did so because J.Y. "wanted a family again." *Id.* at 87–88. On cross-examination, the defense suggested that J.Y.'s abuse allegations were fabricated because, by his own admission, J.Y. was angry when his parents asked him to leave their home and J.Y. was placed in a group home. *Id.* at 107. J.Y. also admitted that he lied "all the time" and had "trouble telling the truth." *Id.* at 113. J.Y. further indicated he had "difficulty remembering things." *Id.* at 114.

Sometime in 1999 or 2000, while living in the group home, J.Y. told a case manager about G.Y.'s sexual abuse. The case manager in turn advised CYS caseworker Kerri Gill. *Id.* at 79–80. Ms. Gill testified that on January 17, 2000, she interviewed G.Y. at his home in the presence of Detective Bosak from the State College Police Department. *Id.* at 182. During the course of the interview, G.Y. stated that while at the cleaning business, J.Y. "was in the bathroom, and [G.Y.] had to go to the bathroom really bad, and [G.Y.'s] pants were coming down, and [J.Y.] was on the toilet and [G.Y.'s] penis went into [J.Y.'s] mouth for a few seconds." *Id.* at 183. G.Y. also told Ms. Gill that his penis could

have been in J.Y.'s mouth for "one or two minutes." *Id.* At the conclusion of the interview, G.Y. reiterated his admissions in a written statement, which he authored and signed. *Id.* at 186; *see* Commonwealth's Trial Exhibit 10.

G.Y.'s January 17, 2000 written statement, which was read into the record by Ms. Gill, described that "somewhere between 1994 through 1995," G.Y. was cleaning when he "had a hard on, as I had to go to the restroom bad. I had to pee. [J.Y.] was sitting down on the toilet at the time, and I started to pick him up and move him so I could go. When moving [J.Y.], my penis went into his mouth for about one minute or less[,] which afterwards I believe [J.Y.] left the room, and I went to the restroom." *Id.* at 186–187. G.Y.'s statement further read: "This should not have happened. I did not jack off, and I am very sorry this happened. I might have said suck my dick out of anger." *Id.* at 187.

Ms. Gill then interviewed S.Y. on January 18, 2000, the day after G.Y.'s initial interview. Mrs. Y. disclosed to Ms. Gill that G.Y. had admitted the cleaning company incident to Mrs. Y after Ms. Gill and Detective Bosak left the residence, leading Mrs. Y. to believe the incident had in fact occurred. *Id.* at 189. Mrs. Y. admitted to Ms. Gill that she had not believed J.Y. when he told her about the abuse. *Id.* Mrs. Y. prepared a written statement in which she described G.Y.'s admissions to her that J.Y. had "licked his penis" for approximately "one to two seconds or one to two minutes." *Id.* at 191–192; *see* Commonwealth's Trial Exhibit 5. Mrs. Y.'s statement was read into the record by Ms. Gill. Mrs. Y.'s statement explained that "[a]fter Det. Bosak [and] [Ms. Gill] left our house last night (1/17/00) I ask [sic] [G.Y.] what happened and [G.Y.] told me that [J.Y.] had licked his penis at [the cleaning company] awhile back." Commonwealth's Trial Exhibit 5.

Ms. Gill testified that she conducted a second interview with G.Y. on January 24, 2000, which was witnessed by Detective Bosak. N.T., 2/1/05, at 197. During the January 24, 2000 interview, G.Y. again discussed the cleaning company incident, and admitted that there had been one additional sexual incident between G.Y. and J.Y. at their home in Pleasant Gap, Pennsylvania, and two incidents in Bellefonte, Pennsylvania. *Id.* at 198. At the conclusion of the January 24, 2000 interview, G.Y. gave a taped statement, which was admitted into the record. *Id.* at 249; *see* Commonwealth's Trial Exhibit 8.

Detective Bosak supported Ms. Gill's recollection of G.Y.'s admissions during the January 17, 2000 and January 24, 2000 interviews. *Id.* at 232–234. During his testimony, Detective Bosak read into the record a letter dated January 26, 2000, which was authored by G.Y. *See* Commonwealth's Trial Exhibit 7. In his January 26, 2000 letter, G.Y. indicated that while living in Bellefonte, "[J.Y.] got me down and for some reason he got my pants down, underwear still on, and was going to touch me near the penis area-I told him to stop that which he did." *Id.* at 245. G.Y. further stated that in another Bellefonte residence, G.Y. "grabbed [J.Y.'s] genitals, and [G.Y.] asked [J.Y.] how he would like that." *Id.* at 246. G.Y. further described that while living in Pleasant Gap, "[J.Y.] pulled down my ... sweatpants ... [J.Y.] had a hard on. Said I love you. Touched my penis for about two or three seconds. I got mad. I told him to go and take a shower which he did." *Id.* at 247. G.Y.'s January 26, 2000 letter also reiterated the prior details he had disclosed regarding the cleaning company incident. *Id.* at 247–248. G.Y. concluded his January 26, 2000 letter by stating "I am very sorry for any

of this. Just wasn't sure what I was thinking of." *Id.* at 248.

At trial, G.Y. testified that he "did admit" to Detective Bosak and Ms. Gill that he had "oral sex with [J.Y.] in [the cleaning company]." N.T., 2/2/05, at 442. However, G.Y. claimed his statements to Detective Bosak and Ms. Gill were not true, and were only furnished to secure help for his son. *Id.* at 451. G.Y. stated that "but for [J.Y.'s] need of help" he "doubt[ed] he would have answered the same way." *Id.* During direct questioning by his trial counsel, G.Y. testified that he "admitted to [his wife] what I told Det. Bosak." *Id.* at 443. At the conclusion of his trial testimony, G.Y. testified that he was acquitted of the Pleasant Gap incident, and that the two Bellefonte events had never gone before the jury. *Id.* at 447.

G.Y.'s trial counsel called Mrs. Y. to testify concerning her January 18, 2000 statement to Detective Bosak and Ms. Gill. *Id.* at 534. Mrs. Y. testified that she never suspected G.Y. of sexually abusing their son. *Id.* at 535. Mrs. Y. testified that she did not believe J.Y.'s sexual abuse allegations concerning G.Y. because of J.Y.'s "history of lying." *Id.* at 536.

The PCRA court recounted the procedural history of this case as follows:

[G.Y.] was originally charged in 2000 with various child sex abuse offenses in three separate cases [involving his own son] docketed at No. 2000–0345 (the cleaning company incident), No. 2000–0346 (the Larimer Street incident), and No. 2000–0347 (the Bellefonte incident). The three cases were consolidated, and a jury trial was scheduled. The Bellefonte case was dismissed pre-trial based on a violation of the *corpus delicti* rule, and a jury trial was held for the remaining two cases. At the conclusion of the jury trial, [G.Y.] was acquitted of the Larimer Street charges, but convicted of the [cleaning company] charges. [G.Y.] was subsequently sentenced to a period of incarceration for the [cleaning company] conviction. Upon the filing of a post-sentence motion, however, [G.Y.'s] sentence was vacated because [G.Y.'s] alleged confession had been improperly sent out with the jury during deliberations. [G.Y.] was granted a new trial for the [cleaning company] charges. The Commonwealth then appealed this Court's order granting [G.Y.'s] post-sentence motion.

While the post-sentence motion order was on appeal, in 2004, [G.Y.] was charged with two counts of Intimidation of a Witness or Victim, docketed at No. 2004–1547. [G.Y.'s] wife, [S.Y.], was charged with the same two offenses, docketed at No. 2004–1548. After the Superior Court affirmed the post-sentence motion order in the [cleaning company] case, and the Pennsylvania Supreme Court denied the Commonwealth's Petition for Allowance of Appeal, the two Intimidation of Witness cases were consolidated with [G.Y.'s] new trial on the [cleaning company] charges.

At trial, both [G.Y.] and [Mrs. Y.] were represented by Bruce Manchester. Following trial, [G.Y.] was again convicted of the [cleaning company] charges, but acquitted of both charges in the Intimidation of Witness case. [Mrs. Y.] was also acquitted of both charges in her Intimidation of Witness case. [G.Y.] was sentenced to a period of incarceration of seven (7) to fourteen (14) years on the new [ ] conviction. [Trial counsel] filed an appeal to the Superior Court, but the appeal was dismissed due to "substantial defects in the brief and appellant's failure to provide us with a complete record for review." [G.Y.] was thereafter appointed new counsel, Ron-

ald McGlaughlin, to represent him in the pursuit of post-conviction collateral relief. This Court granted [G.Y.'s] first PCRA petition without a hearing, upon the stipulation of the parties. Consequently, [G.Y.'s] direct appeal rights on the [cleaning company] case were reinstated. The Superior Court affirmed [G.Y.'s] sentence on February 17, 2010.

[G.Y.], *pro se,* filed a new PCRA Petition on October 11, 2010, alleging ineffective assistance of counsel during the consolidated [cleaning company] and Intimidation of Witness trial. [G.Y.'s] counsel filed an Amended PCRA Petition on November 29, 2010[.]

PCRA Court Opinion, 4/23/12, at 1–3.

The PCRA court held evidentiary hearings on June 30, 2011 and September 22, 2011. On April 23, 2012, the PCRA court granted G.Y. a new trial. The trial court determined that counsel had been ineffective for failing to object to the admission of spousal confidential communications throughout the trial. On May 23, 2012, the Commonwealth filed a timely notice of appeal. Both the Commonwealth and the PCRA court have complied with Pa.R.A.P. 1925.

The Commonwealth presents the following issues for our review:

1. The PCRA Court erred in determining that [G.Y.] had proved that his claim had arguable merit in that the alleged confidential communication was introduced through other means including [G.Y.'s] own testimony and that of Detective Bosak at trial and therefore, not confidential.

2. The PCRA Court erred in determining that [G.Y.] had proved that his claim had arguable merit in that the alleged confidential communication was waived by [G.Y.] through the statements of trial counsel at the PCRA hearing and based on [G.Y.'s] statements and letters to Detective Bosak and others.

3. The PCRA Court erred in determining that [G.Y.] had proved that his attorney had no reasonable basis for his actions in that the statements had previously been allowed into evidence despite trial counsel's objections at the first trial. Therefore, there was no point to object to them again since they had previously been ruled admissible.

4. The PCRA Court erred in determining that [G.Y.] had proved that he suffered prejudice in that the evidence of [G.Y.'s] guilt was overwhelming due to admissions he had made to Detective Bosak, his own statements, the victim's testimony at trial, and other evidence against him; therefore, any alleged error was harmless, and therefore, not prejudicial.

5. The PCRA Court erred in determining that [G.Y.] didn't waive the ineffectiveness claim as [G.Y.] had filed a previous PCRA [petition] at which time he knew or through appointed counsel should have known of the existence of the alleged confidential communication claim.

6. The PCRA Court erred in determining that a second petition should have been entertained as a strong prima facie showing was not offered to demonstrate that a miscarriage of justice occurred.

7. The PCRA Court erred in determining that [G.Y.] was eligible for relief under 42 Pa.C.S.A. § 9543.

Commonwealth Brief at 4–5.

We will examine the Commonwealth's first, second, third, fourth, and seventh issues jointly based on their interrelated nature. Given our reversal of the PCRA

court's grant of relief to G.Y., we need not reach the Commonwealth's fifth and sixth issues, and we decline to do so.

 In reviewing the propriety of an order granting or denying PCRA relief, an appellate court is limited to ascertaining whether the record supports the determination of the PCRA court and whether the ruling is free of legal error. *Commonwealth v. Johnson*, 600 Pa. 329, 966 A.2d 523, 532 (2009). We pay great deference to the findings of the PCRA court, "but its legal determinations are subject to our plenary review." *Id.* Furthermore, to be entitled to relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that the conviction or sentence arose from one or more of the errors enumerated in section 9543(a)(2) of the PCRA. One such error involves the ineffectiveness of counsel.

 To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Id.* "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission. *Id.* at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

Counsel cannot be deemed ineffective for failing to pursue a meritless claim.

*Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa.Super.2003) *(en banc), appeal denied*, 578 Pa. 699, 852 A.2d 311 (2004). Counsel will not be deemed ineffective if any reasonable basis exists for counsel's actions. *Commonwealth v. Douglas*, 537 Pa. 588, 645 A.2d 226, 231 (1994). Even if counsel had no reasonable basis for the course of conduct pursued, an appellant is not entitled to relief if he fails to demonstrate the requisite prejudice which is necessary under Pennsylvania's ineffectiveness standard. *Id.* at 232. When it is clear that appellant has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether the first two prongs have been met. *Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352, 357 (1995).

In determining that trial counsel was ineffective, and that G.Y. was entitled to a new trial, the PCRA court reasoned:

[T]he privilege protecting confidential communications between spouses, states:

Except as otherwise provided in this subchapter, in a criminal proceeding neither husband nor wife shall be competent or permitted to testify to confidential communications made by one to the other, unless this privilege is waived upon the trial.

42 Pa.C.S.A. § 5914.

\* \* \*

In the consolidated [cleaning company] and Intimidation of Witness trial, privileged confidential communications were introduced in the Commonwealth's opening statement, in Commonwealth's Exhibit "5," through the direct examination of Kerry Gill, and through the direct and cross-examination of [S.Y.]. [Trial counsel] concedes he never objected to the introduction of any of the

spousal communications at the second [ ] trial. Tr. September 22, 2011 at 32.

The Court finds [trial counsel] permitted a violation of the spousal confidential communications privilege at the second [ ] trial because the parties never waived the privilege, as required by the statute. Although [Mrs. Y.] testified that she generally recalled talking with [trial counsel] about the fact that confidential spousal communications may not be able to be introduced at trial, tr. June 30, 2011 at 23, she never testified that she waived the spousal privilege. More importantly, [G.Y.] testified repeatedly that he never discussed waiving the spousal privilege with [trial counsel]. Tr. June 30, 2011 at 33–35. [ ] [Trial counsel] testified that he received oral waivers of the spousal privilege from both parties. Tr. September 22, 2011 at 16. Given the conflict in this testimony, and given the strict requirement of waiver, the Court finds that [G.Y.] did not waive the introduction of privileged spousal communications. Because the privilege was not waived, the spousal confidential communications privilege was violated.

[T]he violation of the spousal privilege constitutes ineffective assistance of counsel under the Post–Conviction Relief Act because not only did [trial counsel] lack an objectively reasonable basis for failing to object to the introduction of privileged spousal communications, but [G.Y.] was also prejudiced by the violation. First, [trial counsel] lacked an objectively reasonable basis for failing to object to the confidential communications because they were very detrimental to the defense and served no legitimate trial strategy. Specifically, the statements corroborated [G.Y.'s] inculpatory statements to Detective Bosak. For example, one of [Mrs. Y.'s] statements which was introduced repeatedly without objection is: "I didn't believe [J.Y.] initially, but [G.Y.] now has said it happened. So I guess I have to believe it." [Mrs. Y's] written statement also stated that [G.Y.] told her the victim licked [G.Y.'s] penis, and when asked about this statement on the stand, [Mrs. Y.] testified: "Well I had just asked [G.Y.], and he said it was the word lick." Tr. February 2, 2005 at 545. Additionally, when asked by the Commonwealth to "tell us about that conversation between you and your wife," and whether he admitted to his wife that he had oral sex with the victim, [G.Y.] testified that he "admitted" the things to her that he told to Detective Bosak. Tr. February 2, 2005 at 444. These spousal communications could not have aided Petitioner's defense.

In addition, the introduction of the privileged confidential communications prejudiced [G.Y.]. Because many of the spousal confidential communications introduced during the second [ ] trial were also introduced at the first [ ] trial, the first trial cannot be used as an example of how a jury would react to the evidence against [G.Y.] exclusive of the spousal confidential communications. Therefore, the Court must make an independent determination regarding the prejudicial effect of the spousal communications introduced at the second trial. The Court finds that the introduction of the spousal confidential communications in the second trial, without objection by [trial counsel] and without a waiver by [G.Y.], prejudiced [G.Y.] because they corroborated his inculpatory statements to Detective Bosak. There is a reasonable probability that were it not for this corroboration, [G.Y.] may have been acquitted, especially because [G.Y.] was acquitted of the Larimer Street case, a

case based primarily on [G.Y.'s] statement to Detective Bosak.

PCRA Court Opinion, 4/23/12, at 7–9. We disagree with the PCRA court.

Based on our review of the record *in toto*, we conclude: 1) that G.Y.'s claim of ineffectiveness lacks merit; 2) that his trial counsel had a reasonable strategic basis for not objecting to Mrs. Y.'s testimony concerning G.Y.'s confession on the basis of confidentiality; and 3) that trial counsel's actions did not prejudice G.Y. Therefore, G.Y. is not entitled to relief.

 We recognize that "[c]ommunications between spouses are presumed to be confidential, and the party opposing application of the rule disqualifying such testimony bears the burden of overcoming this presumption." *Commonwealth v. Burrows*, 779 A.2d 509, 514 (Pa.Super.2001) (internal citation omitted). The privilege under 42 Pa.C.S.A. § 5914 prevents a spouse from testifying against the declarant-defendant spouse regarding "any communications which were confidential **when made** and which were made during the marital relationship." *Commonwealth v. May*, 540 Pa. 237, 656 A.2d 1335, 1341–1342 (1995) (footnote omitted) (emphasis supplied). Our Supreme Court has explained that where the challenged spousal communication was divulged by the declarant-defendant to third parties, the statement "does not qualify as [a] confidential communication." *Commonwealth v. Hancharik*, 534 Pa. 435, 633 A.2d 1074, 1077 (1993).

 Here, G.Y.'s statement to his wife describing G.Y.'s molestation of J.Y. occurred **after** G.Y. had already disclosed the same information to Ms. Gill and Detective Bosak, and memorialized it in a written statement, which G.Y. authored and signed. Therefore, we find that G.Y.'s statement to his wife, which she in turn disclosed to Detective Bosak and Ms. Gill orally and in writing, was not "confidential when made," nor does it "qualify as [a] confidential communication." *See May, supra,* at 1341–1342; *Hancharik, supra,* at 1077.

Further, our Supreme Court explained that "[t]he Court in *May* recognized that the question of what is a 'confidential' communication turns in part on the reasonable expectation the declarant has that the communication will remain confidential." *Commonwealth v. Spetzer*, 572 Pa. 17, 813 A.2d 707, 722 (2002). The *Spetzer* court indicated that "a husband who describes to his wife his previous rape of her child . . . can have no reasonable expectation under Pennsylvania law that that communication will remain confidential." *Id.* (analyzing the interplay between 42 Pa.C.S.A. § 5914 and 23 Pa.C.S.A. § 6381(c) of the Child Protective Services Law, which provides that the spousal confidential communication privilege "shall not constitute grounds for excluding any evidence at any proceeding regarding child abuse or the cause of child abuse"). Since G.Y. had already disclosed his molestation of J.Y. to Ms. Gill and Detective Bosak, we are not persuaded that G.Y. had a reasonable expectation that his wife would withhold G.Y.'s statement from Ms. Gill or Detective Bosak, or from other third parties.

This position was echoed by our Supreme Court in *Commonwealth v. Small*, 602 Pa. 425, 980 A.2d 549, 562 (2009). The Court in *Small* reversed the PCRA court's grant of a new trial and determined "[t]here [was] no indication of an intent for the statement not to be divulged, particularly since [declarant-defendant] made **multiple confessions to many other persons.** If [declarant-defendant] wanted to keep the statement confidential, he would not have divulged it to at least three people." *Id.* (emphasis added).

Here, G.Y.'s oral, written, and audio-taped statements furnished between January 17, 2000 and January 26, 2000, contradict any intent by G.Y. to have his molestation of J.Y. remain confidential. *See Small,* 980 A.2d at 562; *see also Commonwealth v. Reese,* 31 A.3d 708, 720 (Pa.Super.2011) (appellant's prior disclosure to a third party of the subject matter involved in the challenged confidential spousal communication "calls into question the **reasonableness** of [a]ppellant's alleged expectation of confidentiality regarding his comments to his spouse") (emphasis in original).

Moreover, we have determined that where a declarant-defendant "testified as to the [challenged spousal confidential communication] ... [w]e could hardly find [testifying spouse's] testimony inadmissible when appellant proffered evidence bearing on the same subject matter." *Commonwealth v. Darush,* 279 Pa.Super. 140, 420 A.2d 1071, 1074 (1980) *vacated on other grounds,* 501 Pa. 15, 459 A.2d 727 (1983).

In this case, G.Y. testified about his January 17, 2000 oral and written statement to Ms. Gill and Detective Bosak. G.Y. further acknowledged his oral and taped statement to them on January 24, 2000. Likewise, G.Y. admitted he authored and delivered to Detective Bosak a letter dated January 26, 2000. G.Y.'s testimony "proferred evidence bearing on the same subject matter" as his January 18, 2000 disclosure to his wife, regarding which Mrs. Y. provided an oral and written statement to police, and testified before the jury. *See Darush, supra,* at 1074. Accordingly, we can "hardly find" Mrs. Y.'s testimony inadmissible. *Id.*

■ Even assuming the challenged communications were confidential, the privilege under 42 Pa.C.S.A. § 5914 can be waived. *See Commonwealth ex rel. Berar-*

*dino v. Berardino,* 96 Pa.Super. 288 at 2 (1929) (spousal confidential communication privilege waived where "evidence now complained of was received without any objection on the part of the defendant, and [testifying spouse] was cross-examined at length by [defendant's] counsel with respect to the matters" claimed to be confidential).

In this case, trial counsel testified that he discussed the privilege afforded by 42 Pa.C.S.A. § 5914 with G.Y. and Mrs. Y., just as he does "in all occasions of a similar nature." N.T., 6/30/11, at 62. Trial counsel unequivocally asserted that G.Y. and Mrs. Y. waived the 42 Pa.C.S.A. § 5914 privilege. N.T., 9/22/11, at 16. Based on the foregoing, we find that the privilege was waived since Mrs. Y. was called to testify by G.Y.'s trial counsel on G.Y.'s behalf, and evidence regarding the communications between G.Y. and his wife was received without objection.

■ Moreover, "[e]ven if it is assumed that the testimony is covered by [42 Pa. C.S.A.] section 5914, counsel could have foregone any objection pursuant to a reasonable trial strategy." *Darush, supra,* at 1077. Here, trial counsel testified that he "analyze[d] section 5914 ... and its application to the facts of this case ... [and concluded that the] communications ... were admissible." N.T., 9/22/11, at 9–10. Trial counsel reasoned that G.Y.'s January 17, 2000 statement to Detective Bosak and Ms. Gill was "identical to [Mrs. Y.'s] statement. So one way or the other that information would have gotten before the jury." *Id.* at 17. Trial counsel testified that Mrs. Y. "in effect parroted in [her January 18, 2000 statement] what [G.Y.] had done. These were voluntary communications to Det. Bosak after the interview. [The statements] read virtually identically ..." *Id.* at 18. Trial counsel asserted that making objections based on 42 Pa.C.S.A.

§ 5914 "wasn't part of my trial strategy." *Id.* at 32. Trial counsel explained that he did not object because "I am very familiar with the law of suppression and I made decisions in the context of the legal aspects and the particular positioning of what was going on at the time." *Id.* at 63.

Trial counsel opined that reviewing Mrs. Y.'s January 18, 2000 statement during her trial testimony benefitted G.Y. "because she also [testified] that she did not believe [the molestation occurred] . . ." *Id.* at 23–24. Trial counsel explained that "our defense . . . [was] that [G.Y. and Mrs. Y.] could corroborate one another . . . because they saw [J.Y.] and his allegations very similarly." N.T., 6/30/11, at 57–58. Trial counsel "thought it appropriate that each of them testify on behalf of the other." *Id.* at 58. Trial counsel stated that he called Mrs. Y. to "testify to the problems that J.Y. had and to establish that there was no intimidation of a witness," which was a charge that both G.Y. and his wife were facing at trial. *Id.* at 60.

We recognize:

> Our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests. The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that counsel's decisions had any reasonable basis.

*Commonwealth v. Douglas*, 537 Pa. 588, 645 A.2d 226, 231 (1994), *quoting Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). Here, trial counsel's reasoned basis for eliciting the spousal testimony, and foregoing any objections thereto, supports our determination that G.Y.'s trial counsel was not ineffective, and precludes G.Y.'s entitlement to PCRA relief. *See Johnson*, 966 A.2d at 533.

■ We further find that G.Y. was not prejudiced by his trial counsel's actions. In *Small, supra*, our Supreme Court opined that "[e]ven if privileged testimony under [42 Pa.C.S.A.] § 5914 is erroneously admitted into evidence, it is harmless error if it is merely cumulative of other admissible testimony." *Small*, 980 A.2d at 562 (internal citation omitted). Likewise, in *Reese, supra*, we expressed that the "properly admitted testimony" of a third party regarding the topic of a declarant-defendant's disclosures to his spouse, "rendered [testifying spouse's] testimony cumulative on that particular point . . . [t]hus, any error [admitting testifying spouse's testimony] was harmless." *Reese*, 31 A.3d at 720. Here, G.Y.'s statement to his wife, along with all the trial testimony referencing the same, was cumulative to J.Y.'s testimony regarding the molestation incident, and to G.Y.'s multiple statements to Detective Bosak and Ms. Gill.

G.Y.'s statements also constitute overwhelming evidence of his guilt. As noted by Ms. Gill, "the fact that [G.Y.] and [J.Y.] having markedly similar, if not identical, details on the incident even though they're being interviewed several counties apart" was "corroborative of [J.Y.'s] account." N.T., 2/1/05, at 221.

■ Further, we recognize that the jury, as "the finder of fact is free to believe all, part or none of a witness' testimony." *Watson v. American Home Assurance Company*, 454 Pa.Super. 293, 685 A.2d 194, 199 (1996) *citing Burrell v. Philadelphia Electric Co.*, 438 Pa. 286, 265 A.2d 516, 517 (1970). Indeed, "[i]t is the function of the jury to evaluate evidence adduced at trial to reach a determination as

to the facts ..." *Commonwealth v. Reynolds,* 835 A.2d 720, 726 (Pa.Super.2003) (internal citation omitted). "[T]he jury [is] not obligated to accept" the evidence submitted by the defense. *Commonwealth v. Boczkowski,* 577 Pa. 421, 846 A.2d 75, 82 (2004) *citing Commonwealth v. Tharp,* 574 Pa. 202, 830 A.2d 519, 527 (2003).

In this case, the jury determined that G.Y. was guilty of molesting J.Y. during the cleaning company incident, despite their knowledge of G.Y.'s prior acquittal regarding the Pleasant Gap incident, and notwithstanding J.Y.'s recantation, his acknowledgement of his anger towards his parents, and his trouble with providing truthful statements and recollecting past memories. Clearly, the jury did not credit the defense testimony regarding the sexual abuse allegations.

In all, based on our review of the record, we do not find G.Y.'s claim of ineffectiveness to be meritorious. G.Y.'s statement to Mrs. Y. was not confidential when made, nor did G.Y. have a reasonable expectation that his communication to Mrs. Y. would remain confidential. Even if confidential, G.Y. waived the privilege under 42 Pa. C.S.A. § 5914. Moreover, waiver aside, trial counsel's reasonable strategic basis for foregoing objections to the spousal communication, and eliciting testimony regarding the same, precludes a finding of ineffectiveness. Finally, the overwhelming evidence of G.Y.'s guilt within the record bars a determination that G.Y. was prejudiced by his trial counsel's actions. Accordingly, we reverse the PCRA court's grant of a new trial, and reinstate the judgment of sentence.

Order reversed and judgment of sentence reinstated.