J-A35025-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellee | | |
| v. | | |
| PAMELA D. ATKINSON, | | |
| Appellant | | No. 193 WDA 2014 |

Appeal from the Judgment of Sentence entered December 16, 2013,
in the Court of Common Pleas of Erie County,
Criminal Division, at No(s): CP-25-CR-0002704-2012

BEFORE:  BENDER, P.J.E., BOWES and ALLEN, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED JANUARY 05, 2015**

Pamela D. Atkinson ("Appellant") appeals from the judgment of sentence imposed after a jury convicted her of corrupt organizations, conspiracy to violate 18 Pa.C.S.A. § 911(b)(4), three counts of possession of a controlled substance with intent to deliver ("PWID"), and criminal use of a communication facility.[1]  We affirm.

The pertinent facts and procedural history may be summarized as follows:  Following a grand jury investigation into the distribution of OxyContin and other controlled substances in Erie County, Pennsylvania, Agent Alan McGill of the Office of Attorney General, Bureau of Narcotics Investigation and Drug Control learned that Appellant was involved in a drug

_____

[1] 18 Pa.C.S.A. §§ 911(b)(3), 903, 35 P.S. § 780-113(a)(3) and 18 P.S. § 7512(a).

distribution ring. Affidavit of Probable Cause, 6/18/12. Utilizing a confidential informant named Ryan Fatica, Officer McGill conducted controlled purchases of OxyContin from an individual name Denise McConnell on July 7, 2010. *Id*.; N.T., 9/24/13, at 35-42. Ms. McConnell was thereafter arrested and informed the police that Appellant and a woman known only as "Viola" were her drug suppliers and that Appellant transported the drugs from New York to Erie approximately once a month. Affidavit of Probable Cause, 6/18/12. An investigation into Appellant's medical records revealed that over several years, Appellant had received numerous OxyContin prescriptions, with a value of approximately seventy thousand ($70,000.00) dollars, from a New York City physician. *Id*. Appellant was subsequently arrested and charged with the aforementioned crimes.

A jury trial commenced on September 24, 2013, at the conclusion of which the jury rendered its convictions. Following a hearing on December 16, 2013, the trial court sentenced Appellant to an aggregate term of imprisonment of 48 to 124 months. Appellant filed a post-sentence motion on December 27, 2013, which the trial court denied by order entered on January 6, 2014. This timely appeal followed. The trial court did not direct Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925. On February 5, 2014, the trial court entered a memorandum opinion stating that the testimony given at trial, the

sentencing record, and the trial court's January 6, 2014 order would suffice to address the issues raised on appeal.

Appellant presents the following issues for our review:

1. WHETHER THE EVIDENCE PRESENTED WAS INSUFFICIENT TO SHOW BEYOND A REASONABLE DOUBT THAT [APPELLANT] PERPETRATED, CONSPIRED TO COMMIT, OR ASSISTED WITH ANY OF THE CRIMES CHARGED HEREIN RELATED TO THE DELIVERY OF OXYCONTIN AS ALLEGED BY THE COMMONWEALTH?

2. DID THE TRIAL COURT COMMIT AN ABUSE OF DISCRETION AND/OR ERROR OF LAW WHEN IT ALLOWED THE COMMONWEALTH TO INTRODUCE CELL PHONE RECORDS, A DATABASE PRINTOUT FROM THE NATIONAL DRUG CODE DIRECTORY, AND PRESCRIPTION RECORDS, AS BUSINESS RECORDS UNDER PA.R.E. 803(6)?

Appellant's Brief at 4

In her first issue, Appellant argues that the evidence was insufficient to support her convictions. Appellant's Brief at 34-41.

Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

*Commonwealth v. Emler*, 903 A.2d 1273, 1276–77 (Pa. Super. 2006).

Appellant was charged with corrupt organizations (18 Pa.C.S.A. § 911(b)(3)), conspiracy to violate 18 Pa.C.S.A. § 911(b)(4), three counts of possession of a controlled substance with intent to deliver (35 P.S.. § 780-113(a)(30)), and criminal use of a communication facility (18 P.S. § 7512(a)).

With respect to Appellant's conviction for the crime of corrupt organizations, 18 Pa.C.S.A § 911(b)(3) provides:

> It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

To sustain a conviction for corrupt organizations, "the Commonwealth must prove that there was an ongoing organization engaged in commerce and that the associates of the organization functioned as a continuing unit..." *Commonwealth v. Donahue*, 630 A.2d 1238, 1245 (Pa. Super. 1993). The statute further defines "pattern of racketeering activity" as "a course of conduct requiring two or more acts of racketeering activity one of which occurred after the effective date of this section." 18 Pa.C.S.A. § 911(h)(4). "Racketeering activity," in turn, is defined as, *inter alia*, "any violation of the Controlled Substance, Drug, Device and Cosmetic Act." 18 Pa.C.S.A. § 911(h)(1)(ii).

To sustain Appellant's criminal conspiracy conviction, the Commonwealth was required to establish that Appellant: (1) entered into an agreement to commit or aid in an unlawful act with another person or

persons, (2) with a shared criminal intent, and (3) an overt act was done in furtherance of the conspiracy. ***Commonwealth v. McCall***, 911 A.2d 992, 996 (Pa. Super. 2006). "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." ***Id*** (citations omitted).

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.

***Commonwealth v. Johnson***, 719 A.2d 778, 784–85 (Pa. Super. 1998) (en banc).

With respect to PWID, 35 P.S. § 780–113 provides:

(a)  The following acts and the causing thereof within the Commonwealth are hereby prohibited:

...

(30)  Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed

by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

Finally, in order to sustain Appellant's conviction for criminal use of a communications facility, the Commonwealth was required to demonstrate: (1) Appellant knowingly and intentionally used a communication facility; (2) Appellant knowingly, intentionally or recklessly facilitated an underlying felony; and (3) the underlying felony occurred. **Commonwealth v. Moss**, 852 A.2d 374, 382 (Pa. Super. 2004). "Facilitation has been defined as 'any use of a communication facility that makes easier the commission of the underlying felony.' If the underlying felony never occurs, then [the defendant has] facilitated nothing and cannot be convicted under § 7512." **Id**. (citations omitted).

At trial, the Commonwealth presented the testimony of Ryan Fatica, who testified that he acted as a confidential informant for the police officers investigating OxyContin distribution in Erie. N.T., 9/24/13, at 35-42. In his capacity as a confidential informant, on July 7, 2010, he purchased 49 OxyContin pills from Denise McConnell, from whom he had obtained drugs in the past. **Id**.

The Commonwealth also presented the testimony of Ms. McConnell, who testified that she had regularly purchased OxyContin from Appellant over the course of three years. N.T., 9/25/13, at 8-14. Ms. McConnell testified that on July 7, 2010, after Mr. Fatica contacted her to request

drugs, she spoke with Appellant over the phone to set up the drug purchase, drove to Appellant's house on East 22nd Street, and was met there by a woman named "Vi" who provided Ms. McConnell with the OxyContin that was subsequently delivered to Mr. Fatica. *Id*. Ms. McConnell testified that she had in the past participated in numerous drug transactions with Appellant, where Ms. McConnell acted as the "middleman," obtaining drugs from Appellant to provide to various customers. ***Id***. at 16-22.

Additionally, the Commonwealth presented the testimony of Jody Jefferson, who testified that he had purchased OxyContin from Appellant at her residence on East 22nd Street. ***Id***. at 56. The Commonwealth also presented the testimony of Vivian Schwindt, James Wentz, and Jeremy Cook, who testified that although they never entered Appellant's residence at East 22nd Street or dealt personally with Appellant, they regularly accompanied Ms. McDonnell and/or Mr. Jefferson to that location to purchase drugs, and waited outside while Ms. McDonnell or Mr. Jefferson entered the residence and returned with OxyContin pills. ***Id***. at 79-126. Additionally, Jill Valentino, an investigator from the New York State Department of Health, Bureau of Narcotic Enforcement, testified that her review of the New York State Department of health records revealed that OxyContin in quantities of 300 units were dispensed to Appellant on 14 different occasions between 2009 and 2011. ***Id***. at 135-139. Moreover, the Commonwealth introduced

telephone records revealing that on July 7, 2010, Ms. McConnell placed calls to a telephone number which was listed to Appellant.  *Id*. at 162-165.

We conclude that the foregoing evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to support Appellant's convictions for corrupt organizations, conspiracy, PWID and criminal use of a communication facility.

Appellant asserts, nevertheless, that the evidence was insufficient to support her convictions because the Commonwealth presented evidence of only one actual drug delivery that occurred on July 7, 2010 between Ryan Fatica and Denise McConnell.  Appellant's Brief at 34-41.  Appellant argues that that there was insufficient evidence to demonstrate that she was physically present during the July 2, 2010 drug transaction, and that given the lack of any testimony as to her involvement in any other specific drug transactions, the evidence was insufficient to support any of her convictions. This claim is meritless because the jury could have reasonably concluded from the testimony that on July 7, 2010, Appellant sold Ms. McConnell the OxyContin that she later provided to Mr. Fatica; moreover, the jury could have reasonably concluded, based on the testimony of Ms. McConnell, Mr. Fatica and Mr. Jefferson, among others, that Appellant regularly distributed OxyContin.

Appellant next challenges the credibility of Mr. Fatica, given that he described himself as a drug addict and pathological liar, and also challenges

the credibility of Ms. McConnell, Mr. Jefferson, Ms. Schwindt, Mr. Wentz, and Mr. Cook, on the basis that they were drug users, thus rendering their testimony incredible. *Id*. However, it is well settled that the jury, as the finder of fact, is free to believe all, part or none of a witness' testimony. Indeed, "[i]t is the function of the jury to evaluate evidence adduced at trial to reach a determination as to the facts." *Commonwealth v. G.Y.*, 63 A.3d 259, 269-270 (Pa. Super. 2013). Here, even after Appellant conducted a rigorous cross-examination of the Commonwealth's witnesses designed to call into question their credibility and reveal weaknesses in their testimony, the jury, which was aware that the aforementioned witnesses were drug users, nevertheless found their testimony persuasive. We will not disturb such credibility determinations on appeal. *See Commonwealth v. Hudson*, 414 A.2d 1381 (Pa. 1980) (holding that the fact that the witness used drugs and had a prior criminal record was a matter of credibility properly left to the jury's consideration). Appellant's sufficiency challenge fails.

In her second issue, Appellant argues that the trial court erred in permitting the Commonwealth to introduce evidence of: (a) cell phone records, (b) a database printout from the National Drug Code Directory, and (c) prescription records from Express Scripts, as business records under Pa.R.E. 803(6).

"The admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." ***Commonwealth v. Treiber***, 874 A.2d 26, 31 (Pa. 2005). Here, Appellant first objects to the trial court's decision to allow the Commonwealth to introduce evidence and testimony pertaining to AT&T and Sprint telephone records that revealed Appellant's involvement in the July 7, 2010 drug transaction with Mr. Fatica and Ms. McDonnell. Specifically, at trial, the trial court permitted the Commonwealth to present the testimony of Agent Robert Mattis, a narcotics agent with the Erie County Attorney General's Technical Services Unit, who testified with regard to the aforementioned telephone records which he received after making an official request with the respective telephone companies. N.T., 9/25/13, at 143. Appellant argues that the telephone records constituted hearsay that did not fall within any exception, and were therefore inadmissible because the Commonwealth failed to demonstrate that Agent Mattis was familiar with the record-keeping practices of AT&T and Sprint, and could not testify to whether the records were kept in the ordinary course of those businesses, in order for the records to be admissible under the business records exception.

Pa.R.E. 803(6), known as the 'business record exception' to hearsay, provides:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:

(6) **Records of a Regularly Conducted Activity.** A record (which includes a memorandum, report, or data compilation in any form) of an act, event or condition if,

    (A) the record was made at or near the time by – or from information transmitted by – someone with knowledge;

    (B) the record was kept in the course of a regularly conducted activity of a "business", which term includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit;

    (C) making the record was a regular practice of that activity;

    (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

    (E) neither the source of information nor other circumstances indicate a lack of trustworthiness

The Uniform Business Records as Evidence Act, codified at 42 Pa.C.S.A. § 6108, additionally provides:

> A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

42 Pa.C.S.A. § 6108.

Here, Agent Mattis testified that he was "very familiar" with the way that telephone companies in general compile subscriber telephone data.

N.T., 9/25/13, at 144. Agent Mattis testified that "telecommunications providers [are] mandated by Congress to keep records of customer usage and subscriber information relative to those clients so they're available for law enforcement agencies upon valid requests that are supported by court orders, subpoenas, and backed by affidavit of probable cause. Those are the records that they keep in the regular course of their business." *Id*. He testified that every time a subscriber uses their cell phone, "it would generate an electronic record that's kept in a database [and] upon the inquiry of law enforcement ... those records would then be compiled to a report, either paper or electronically, and then provided to the requesting law enforcement agency." *Id*. at 145. Moreover, at the time records were introduced, the Commonwealth presented documents entitled "Declarations of Authenticity" from the custodian of records at both Sprint and AT&T, attesting to the authenticity of the records. *See* Pa.R.E. 803(6)(D).

Based on the foregoing, we find no abuse of discretion in the trial court's determination that Agent Mattis was a "qualified witness." *See* Pa.R.E. 803(D). In addition, the Commonwealth separately verified the trustworthiness of the documents through "Declarations of Authenticity" signed by the record custodians at both AT&T and Sprint attesting to their legitimacy. *Id*. We conclude therefore that the trial court did not err in permitting the Commonwealth to introduce evidence of the telephone records. We are satisfied that the Commonwealth presented sufficient information to justify a presumption of the trustworthiness of the telephone

records so as to offset the hearsay character of the evidence. *See* Pa.R.E. 603(6)(E). Accordingly, Appellant's challenge to the admission of the evidence fails.

Appellant next challenges the trial court's decision to permit the Commonwealth to introduce a database printout from the National Drug Code Directory Website. The database printout was offered to rebut Appellant's testimony that in April of 2010, Purdue Pharmaceutical Company (the manufacturer of OxyContin) ceased providing her with "OxyContin **OC**", the version of Oxycontin she had previously been receiving. N.T., 9/26/13, at 58-62. Instead, Appellant claimed that after April 2010, she began to receive a new version of OxyContin labeled "OxyContin **OP**" which was gel-like in form and could not be crushed or dissolved and therefore could not be abused, unlike the prior "**OC**" formulation. *Id*. By asserting that she last received "OxyContin **OC**" in April 2010, Appellant sought to demonstrate that she could not have been involved in the July 7, 2010 controlled buy involving Ms. McConnell and Mr. Fatica, in which police officers recovered 49 "OxyContin OC" pills.

To rebut Appellant's testimony that she no longer received any "OxyContin **OC**" pills after April 2010, the Commonwealth introduced the testimony of Agent Christopher Parker of the Erie County Office of the Attorney General Diversion Investigative Unit, who testified, based on a printout from the "National Drug Code Directory" website – which is generated by the United States Food and Drug Administration (FDA) – that

"Oxycontin **OP**" only became available for distribution on August 8, 2010. N.T., 9/26/13, at 133-140. Appellant argues that the trial court erred in permitting the Commonwealth to introduce under the business records exception the information from the FDA's online "National Drug Code Directory" because Agent Parker was not qualified to testify as to the business practices of the FDA and whether the FDA prepared and maintained the National Drug Code Directory in the regular course of its business. Appellant's Brief at 54-58.

We conclude that even if the Commonwealth failed to lay an adequate foundation for the introduction of the National Drug Code Directory printout as a business record, the trial court could have properly taken judicial notice of the FDA's National Drug Code Directory as a source "whose accuracy cannot reasonably be questioned." **See** Pa.R.E., Rule 201(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); 34 FR 11157 (July 1, 1969) ("The Secretary of Health, Education, and Welfare … has directed the Commissioner of Food and Drugs to establish a National Drug Code System. The National Drug Code System will provide an identification system in computer language to permit automated processing of drug data by Government agencies, drug manufacturers and distributors, hospitals and insurance companies. The system has been developed with Government-industry agreement and will consist of a nine-character National Drug Code

(NDC)"); 36 FR 27; 21 U.S.C.A. § 360 (Registration of producers of drugs or devices). Accordingly, Appellant's evidentiary challenge fails.

Finally, Appellant challenges the trial court's decision to permit the Commonwealth to introduce documentary evidence of Appellant's prescription records from Express Scripts, the pharmacy that provided her with OxyContin. Appellant's Brief at 58-59. Our review of the record reveals that when the Commonwealth introduced the Express Scripts prescriptions into evidence, Appellant did not object to their introduction. N.T., 9/26/13, at 140-142. ***See Commonwealth v. Boyd***, 679 A.2d 1284, 1289 (Pa. Super. 1996) ("In order to preserve for appellate review any claim of error regarding the admission of evidence, a party must specifically object to the admission of such evidence at trial. Failure to do so results in a waiver of that claim of error in the evidence's admission."). This claim is therefore waived.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/5/2015

- 15 -