J-S78017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JAMES DUNCAN, :
:
Appellant : No. 585 WDA 2017

Appeal from the PCRA Order March 16, 2017
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0000909-2012

BEFORE:   OLSON, J., DUBOW, J., and STRASSBURGER, J.*

MEMORANDUM BY DUBOW, J.:                    **FILED MAY 09, 2018**

Appellant James Duncan seeks review of the Order dismissing his Petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-46, and denying his Motion for Post-Conviction DNA Testing.  We affirm on the basis of the PCRA court's Pa.R.Crim.P. 907 Opinion, dated February 22, 2017, and its Opinion denying the Motion for DNA testing, dated February 27, 2017.

On September 10, 2013, the court sentenced Appellant to an aggregate term of 21 to 42 years' incarceration after a jury convicted him of Third-Degree Murder, Possession of an Instrument of Crime ("PIC"), and Abuse of Corpse in connection with the stabbing death of Nikkia Sawyer.[1]

_____

[1] We summarized the underlying facts in our disposition of Appellant's direct appeal as follows:
*(Footnote Continued Next Page)*

_____

*   Retired Senior Judge assigned to the Superior Court.

This Court affirmed the Judgment of Sentence and on June 20, 2015, the Supreme Court denied *allocatur*. ***See Commonwealth v. Duncan***, No. 1548 WDA 2013 (Pa. Super. filed 12/23/14) (unpublished memorandum), ***appeal denied***, 117 A.3d 295 (Pa. 2015).

Appellant filed a timely, counseled PCRA Petition on June 9, 2016. Simultaneously, he filed a Post-Conviction Motion for the Performance of

*(Footnote Continued)* ⸻

> On June 21, 2011, the naked and mutilated body of 27-year-old Nikkia Sawyer was discovered by her mother at Sawyer's apartment at the Highpoint Towers in the City of Erie. Sawyer's body was lying partially covered with blankets and towels on her bed, with numerous stab wounds, her feet were bound with a garment, her hands were tied behind her, and there was a shirt or cloth covering her face. When Sawyer's face was uncovered, a pair of Victoria's Secret panties was found stuffed in her mouth. From the large number of stab wounds to Sawyer's body and the absence of a significant volume of blood in the apartment, the police determined that the scene had been cleaned up before the body was discovered.
>
> An autopsy revealed the Sawyer had been stabbed approximately 60 times, including in the face, neck, chin, chest, and torso. Dried semen was found on Sawyer's breasts and navel area, as well as on a fleece blanket on Sawyer's bed, and was sent for DNA analysis.
>
> Appellant, at the time also a resident of Highpoint Towers, was acquainted with Sawyer through his girlfriend, Shekirah Curry, who had known Sawyer since they were both eight years old. Duncan's DNA was found in the samples taken from Sawyer's body and the blanket. His hand print was also found on a Victoria's Secret bag hanging on Sawyer's bedroom door.

***Commonwealth v. Duncan***, 1548 WDA 2013 at 1-2 (Pa. Super. filed 12/23/14) (unpublished memorandum).

forensic DNA Testing on Crime Scene Evidence. In his Motion for DNA Testing, Appellant sought testing on 36 pieces of evidence found at the crime scene that had not undergone DNA testing by Commonwealth experts. In his PCRA Petition, Appellant averred that counsel was ineffective in failing to hire a DNA expert to analyze those same 36 items.

On February 22, 2017, the court filed a Notice of Intent to Dismiss pursuant to Pa.R.Crim.P. 907. On February 27, 2017, the court denied Appellant's Motion for DNA testing. Appellant filed a response to the Rule 907 Notice. On March 16, 2017, the court dismissed the PCRA Petition.

Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

In his Brief, Appellant raises the following issue:

> The PCRA Court erred in denying (A) Appellant's Motion for DNA Testing, and [B] Appellant's PCRA Petition based on ineffective assistance of counsel for failing to conduct DNA testing.

Appellant's Brief at 1 (some capitalization omitted).

**MOTION FOR DNA TESTING**

Because post-conviction DNA testing is provided for under the PCRA, "our standard of review permits us to consider only whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error." ***Commonwealth v. Conway***, 14 A.3d 101, 108 (Pa. Super. 2011) (citation omitted).

We review an order denying a motion for post-conviction DNA testing as follows.

- 3 -

[T]he trial court's application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law. When reviewing an order denying a motion for post-conviction DNA testing, this Court determines whether the movant satisfied the statutory requirements listed in Section 9543.1. We can affirm the court's decision if there is any basis to support it, even if we rely on different grounds to affirm.

*Commonwealth v. Williams*, 35 A.3d 44, 47 (Pa. Super. 2011) (internal

citations omitted).

Regarding the post-conviction DNA statute, we observe that

[t]he statute sets forth several threshold requirements to obtain DNA testing: (1) the evidence specified must be available for testing on the date of the motion; (2) if the evidence was discovered prior to the applicant's conviction, it was not already DNA tested because (a) technology for testing did not exist at the time of the applicant's trial; (b) the applicant's counsel did not request testing in a case that went to verdict before January 1, 1995; or (c) counsel sought funds from the court to pay for the testing because his client was indigent, and the court refused the request despite the client's indigency. Additionally, … [u]nder section 9543.1(c)(3), the petitioner is required to present a prima facie case that the requested DNA testing, assuming it gives exculpatory results, would establish the petitioner's actual innocence of the crime. Under section 9543.1(d)(2), the court is directed not to order the testing if it determines, after review of the trial record, that there is no reasonable possibility that the testing would produce exculpatory evidence to establish petitioner's actual innocence. From the clear words and plain meaning of these provisions, there can be no mistake that the burden lies with the petitioner to make a prima facie case that favorable results from the requested DNA testing would establish his innocence. We note that the statute does not require petitioner to show that the DNA testing results would be favorable. However, the court is required to review not only the motion for DNA testing, but also the trial record, and then make a determination as to whether there is a reasonable possibility that DNA testing would produce exculpatory evidence **that would establish petitioner's actual innocence**. We find no ambiguity in the standard established by the legislature with the words of this statute.

- 4 -

*Id*. at 49-50 (citation omitted; emphasis in original).

Instantly, Appellant has failed to meet the threshold requirements for DNA testing under Section 9543.1(a)(2). The items at issue were discovered before Appellant's trial, the DNA testing technology was available at the time of Appellant's trial, the verdict was rendered after January 1, 1995, and, contrary to Appellant's contention, there is no evidence that the trial court refused funds for DNA testing. *See* 42 Pa.C.S. § 9543.1(a)(2). *See* Trial Ct. Op., dated 2/22/17, at 5 (detailing four approved applications for funds totaling nearly $9,000 filed by Appellant for expert funding concerning DNA evidence).

We further note that the PCRA court assessed Appellant's request for DNA testing in light of the trial record to see if there were a reasonable possibility that the testing would produce exculpatory evidence to establish Appellant's actual innocence. *See* 42 Pa.C.S. § 9543.1(c)(3) and (d)(2). The PCRA court ultimately concluded that Appellant failed to set forth a *prima facie* case that the requested DNA testing would establish his actual innocence. *See* PCRA Court Opinion, 2/27/17. After reviewing the briefs of the parties, the certified record and the applicable law, we agree.

Having concluded that the PCRA court's February 27, 2017 Opinion ably and comprehensively disposes of Appellant's issues raised on appeal, with appropriate reference to the record and without legal error, we will affirm on the basis of that opinion. *See id*.at 7 (concluding that Appellant's "bald assertion" that DNA testing of additional items would establish his

"actual innocence" of the offenses is premised upon speculation; and finding that (1) "a plethora of DNA evidence established [Appellant's] culpability[;]" (2) "numerous additional items of evidence concerning [Appellant] supported the convictions[;]" (3) "the DNA evidence of third persons other than [Appellant] . . . was submitted to the jury[;]" and (4) "[e]ven though the jury was presented with evidence [that] third persons were present in the victim's apartment, the jury found the evidence implicating [Appellant] was sufficient to convict.").

## PCRA PETITION – Ineffective Assistance of Counsel

Our scope and standard of review of the denial of a PCRA Petition is well-established.

> In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

*Commonwealth v. Reyes–Rodriguez*, 111 A.3d 775, 779 (Pa. Super. 2015) (internal citations and quotations omitted).

Appellant asserts that his trial counsel provided ineffective assistance for failing "to conduct any forensic investigation, or DNA testing, on evidence found at [the] crime scene that contained DNA material." Appellant's Brief at 10. We review ineffectiveness claims with the following precepts in mind.

The law presumes counsel has rendered effective assistance. ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010). "The burden of demonstrating ineffectiveness rests on [A]ppellant." ***Id***. To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." ***Commonwealth v. Fulton***, 830 A.2d 567, 572 (Pa. 2003). Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim. ***Commonwealth v. Jones***, 811 A.2d 994, 1002 (Pa. 2002).

Appellant is unable to meet his burden. Specifically, as the above discussion indicates, Appellant is unable to prove that his underlying claim— that further testing would prove his innocence—has merit. Likewise, he is unable to prove that but for counsel's alleged ineffectiveness, "there is a reasonable probability that the outcome of the challenged proceeding would have been different." ***Fulton***, ***supra***. Accordingly, Appellant's ineffectiveness claim fails.

The PCRA court's February 22, 2017 Opinion comprehensively reviews and disposes of Appellant's issues raised on appeal, with appropriate reference to the record, citation to relevant case law, and without legal

error.  ***See id***. at 6-9 (noting claim lacks arguable merit because Appellant "failed to establish how any such evidence would have been exculpatory, or how any amount of additional DNA testing would have changed the outcome of the tria[l]"; finding speculative and without merit Appellant's bald assertion that "had such DNA testing been conducted, the results *could* have incriminated other individuals and proved [his] innocence[;]" noting that although "a plethora of DNA evidence established [Appellant's] culpability," his convictions were not based solely on DNA evidence). Accordingly, we affirm on the basis of the February 22, 2017 Opinion.

The parties are instructed to attach both the February 22, 2017 Opinion and the February 27, 2017 Opinion to any future filings.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  5/9/2018

COMMONWEALTH OF PENNSYLVANIA     :    IN THE COURT OF COMMON PLEAS

                        :    OF ERIE COUNTY, PENNSYLVANIA

                        :

            v.               :    CRIMINAL DIVISION

                        :

JAMES DUNCAN, PETITIONER       :    NO. 909 of 2012

## NOTICE OF INTENT TO DISMISS PCRA PURSUANT TO PA.R.CRIM.P. 907

AND NOW, to-wit, this *22nd* day of February, 2017, after an independent review of the record, consideration of Petitioner's Petition for Post-Conviction Relief Under the Post Conviction Relief Act and the Commonwealth's Answer to and Motion to Dismiss Petition for Post-Conviction Relief and Motion for Performance of Forensic DNA Testing, Petitioner, James Duncan, has failed to state a claim for relief.[1] Because the PCRA claims can be addressed based on the existing record, there is no need for an evidentiary hearing.

## FACTUAL/PROCEDURAL BACKGROUND

On July 16, 2013, after six days of testimony, a jury convicted Petitioner of Criminal Homicide/Murder, Aggravated Assault; Possessing Instruments of Crime; Recklessly Endangering Another Person; and Abuse of Corpse.[2] The convictions were for the brutal murder of a 27 year-old female, Nikkia Sawyer, whose mother found her dead, lying on her back in bed, nude and partially covered, with approximately 60 knife wounds over her body. *Trial*

---

[1] Concurrent with the filing of the instant PCRA motion, Petitioner filed a Motion for the Performance of Forensic DNA Testing on Crime Scene Evidence. The Commonwealth responded to both the PCRA motion and the motion for DNA testing in a single filing. The Court will address Petitioner's motion for DNA testing in a separate Opinion and Order.

[2] 18 Pa.C.S.A. § 2502(c); 18 Pa.C.S.A. §2702(a)(1); 18 Pa.C.S.A. §907(a)(2); 18 Pa.C.S.A. §2705 and 18 Pa.C.S.A. §5510, respectively.

*Transcript, Day Three, July 12, 2013 ("T.T. 3"), p. 178; Trial Transcript, Day One, July 10, 2013 ("T.T. 1"), pp. 32-33; Trial Transcript, Day Two, July 11, 2013 ("T.T. 2"), pp. 72-117.* An autopsy revealed Sawyer died from multiple deep stab injuries to the chest. *T.T. 2, pp. 117, 122.*

On September 10, 2013, the Court sentenced Petitioner to a term of 20 to 40 years of incarceration on the third degree murder conviction, 6 to 12 months of incarceration for Possessing Instruments of Crime; and 6 to 12 months of incarceration for Abuse of Corpse.[3] All sentences were imposed consecutively, for an aggregate of 21 to 42 years of incarceration.

Petitioner filed post-sentence motions, which were denied by Order entered on September 20, 2013. On September 25, 2013, Petitioner filed a Notice of Appeal. Petitioner raised for appellate review the following claims: there was insufficient evidence to support the convictions; the Trial Court abused its discretion in refusing to grant some of the Petitioner's requests for continuances; the Trial Court abused its discretion in permitting the jury to view Petitioner in handcuffs and shackles in a video played for the jury during which Petitioner was interviewed by law enforcement; the Trial Court abused its discretion in permitting the jury to hear testimony from Petitioner's girlfriend that his teardrop tattoos meant he had killed someone, it was time to get another such tattoo, and he would kill his girlfriend; the Trial Court violated Petitioner's rights to due process and effective assistance of counsel during voir dire; and the evidence was insufficient to support the convictions.

On December 23, 2014, the Superior Court affirmed the judgment of sentence. *Commonwealth v. Duncan, 1548 WDA 2013 (Pa. Super. 2014)(unpublished memorandum).*

---

[3] The convictions for Aggravated Assault and Recklessly Endangering Another Person merged with the third degree murder conviction for sentencing purposes.

2

Petitioner filed a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania which was denied on June 10, 2015.

On June 9, 2016, Petitioner timely filed a counseled Petition for Post-Conviction Relief Under the Post Conviction Relief Act, 42 Pa.C.S.A. §9541 *et seq.*[4] Concurrently, Petitioner filed a Motion for the Performance of Forensic DNA Testing on Crime Scene Evidence.[5]

In the PCRA, Petitioner asserts his convictions resulted from ineffective assistance of trial counsel which so undermined the truth-determining process that no reliable adjudication of guilt could have taken place. Petitioner asserts counsel was ineffective in failing to hire a DNA expert to analyze 36 out of 50 items retrieved from the crime scene that were not analyzed by the Commonwealth's DNA expert. Petitioner claims that, "[h]ad such DNA testing been conducted, the results *could* have incriminated other individuals and proved Defendant's innocence." *PCRA Motion, ¶9 (emphasis added)*. Petitioner further claims there was insufficient funding of expert services for Petitioner's defense to adequately challenge the Commonwealth's DNA evidence at trial, and the funding provided for defense experts "fell below constitutional standards" and entitles Petitioner to relief. *PCRA Motion, ¶10.*

On July 12, 2016, the Commonwealth filed an Answer and Motion to Dismiss Petition for Post-Conviction Relief and Motion for Performance of Forensic DNA Testing. The Commonwealth asserts Petitioner failed to prove any of the three prongs of the test for ineffectiveness of counsel. The Commonwealth asserts Petitioner's averment that DNA testing "could have ... proved Defendant's innocence" is insufficient.

---

[4] Petitioner's judgment of sentence became final on September 8, 2015, ninety (90) days after the Supreme Court of Pennsylvania denied allocator on June 10, 2015. *See, U.S. Sup. Ct. Rule 13(1), 1 Pa.C.S.A. §1908*. As the instant PCRA filed on June 9, 2016 was filed within one year of the date the judgment of sentence became final, it is timely. *See 42 Pa.C.S.A. §9545(b)(1).*

[5] The motion for DNA testing shall be addressed in a separate Memorandum Opinion and Order.

## LEGAL STANDARDS

To be eligible for relief under [the PCRA], the petitioner must plead and prove by a preponderance of the evidence, *inter alia*, the allegation of error has not been previously litigated or waived. *42 Pa.C.S.A. §9543(a)(3)*. An issue is waived if a petitioner could have, but failed to raise an issue prior to the instant proceeding. *42 Pa.C.S.A. §9544(b)*.

To obtain relief under the PCRA premised upon a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence, "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." *42 Pa.C.S.A. §9543(a)(2)(ii)*. "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009).

To establish ineffective assistance of counsel, the petitioner must "demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner was prejudiced by counsel's act or omission." *Commonwealth v. G.Y.*, 63 A.3d 259, 265 (Pa. Super. 2013). A finding of "prejudice" requires petitioner to establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

> Counsel cannot be deemed ineffective for failing to pursue a meritless claim. Counsel will not be deemed ineffective if any reasonable basis exists for counsel's actions. Even if counsel had no reasonable basis for the course of conduct pursued, [petitioner] is not entitled to relief if he fails to demonstrate the requisite prejudice which is necessary under Pennsylvania's ineffectiveness standard. When it is clear that [petitioner] has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone, without a determination of whether the first two prongs have been met.

*Id.* (internal citations omitted).

4

4a

## DISCUSSION

### 1. Challenge to the Constitutionality of Funding for Expert Witnesses

Petitioner's claim that funding for defense expert witnesses to challenge the Commonwealth's DNA evidence was inadequate/did not meet constitutional standards is waived, for failure to raise the issue on direct appeal. Petitioner did not challenge on direct appeal whether adequate funds were provided for his defense. Therefore, the issue is waived. *See 42 Pa.C.S.A. §§9543(a)(3), 9544(b)*.

Assuming *arguendo* the issue is not waived, the record demonstrates adequate defense funding was provided. The Trial Court approved the numerous requests by Petitioner for expert funding concerning DNA evidence.

On January 17, 2013, trial counsel filed an Application for Funds for Forensic/DNA Expert, SciLaw Forensics, Ltd, requesting $1,500.00. *Application for Funds for Forensic/DNA Expert filed January 17, 2013, ¶4*. On January 17, 2013, the Court approved the request.

On January 25, 2013, trial counsel filed an Application for Funds for a Forensic Pathologist, Karl Williams, M.D., M.P.H, chief medical examiner, Allegheny County. On February 13, 2013, the Court approved the request for $3,500.00.

On March 18, 2013, Petitioner's trial counsel filed a Motion for Payment of Forensic Expert and Request for Additional Funding, concerning services of SciLawForensics, Ltd. On April 22, 2013, the Court granted the request for $700.00.

On June 12, 2013, trial counsel requested additional funding in the sum of $3,000.00 for SciLawForensics, Ltd. On June 12, 2013, the Court granted the request.

There were no other motions filed by Petitioner which were refused by the Court. The claim must fail.

## 2. Ineffective Assistance of Trial Counsel Claim

Petitioner has failed to establish by a preponderance of the evidence the ineffective assistance of trial counsel which, in the circumstances of this case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

Petitioner claims trial counsel failed to retain a DNA expert to analyze items which did not undergo DNA analysis by Commonwealth experts.

Initially, Petitioner has failed to demonstrate by a preponderance of the evidence the first prong of the ineffectiveness test, i.e., that the underlying claim is of arguable merit.

The ineffectiveness claim lacks arguable merit, because Petitioner failed to establish how any such evidence would have been exculpatory, or how any amount of additional DNA testing would have changed the outcome of the trial.

The evidence Petitioner claims should have undergone DNA testing includes blood under the fingernails; a hair in the victim's left hand; the Victoria's Secret panties found stuffed in the victim's mouth; a tan washcloth in the sink; blood in the sink; a towel on the bed; vaginal, rectal and oral swabs and smears; a nasal mucus sample; underwear from the apartment; a teddy bear; a purse; another Victoria's Secret bag other than the one on which Petitioner's handprint was found; and a contact lens.

Petitioner fails to assert any justification or basis for testing any of these additional items. Petitioner fails to allege any reason why more items should have undergone DNA analysis, and fails to assert any facts suggesting that further testing would have produced exculpatory evidence. Instead, Petitioner merely and baldly asserts, "[h]ad such DNA testing been conducted, the results *could* have incriminated other individuals and proved Defendant's

6

innocence." *See, PCRA Motion.* This bald assertion falls short in establishing a claim of arguable merit.

The claim also lacks arguable merit because the DNA evidence found at the scene was not limited to that of the victim and the Petitioner. Petitioner labors under the misapprehension that the presence of DNA of third persons will somehow serve to exonerate him. The DNA of other persons *was* found at the scene.[6] The jury, in fact, heard about the DNA of other contributors, both known/identified and unknown/unidentified, whose DNA was found at the crime scene. Despite this, the jury found Petitioner guilty beyond a reasonable doubt of the crimes charged.

Additionally, the claim lacks arguable merit because the Petitioner's convictions were not based solely on DNA evidence.

A plethora of DNA evidence established Petitioner's culpability. Evidence introduced at trial established that Eric Vey, M.D., forensic pathologist, prepared a sexual assault kit which

---

[6] Expert testimony concerning forensic DNA analysis of 23 items submitted by the Pennsylvania State Police crime lab included the following.

Alex Glessner, Ph.D., forensic DNA scientist for the Pennsylvania State Police, testified on the second day of trial. *T.T. 2, pp. 154-235.* Dr. Glessner initially received 18 items for DNA analysis and comparison. *T.T. 2, p. 168.* Four of these items were from four known individuals to establish standard references, or controls, for analysis of the other items. *T.T. 2, pp. 168-170.* The four initial DNA control samples were taken from the following: the victim, Richard L. Green, Ryan Green, and Bernard J. Przybyszewski. *T.T. 2, 7/11/13, pp. 168-170.* Later, Glessner received DNA samples from Richard Young and Petitioner to compare with questioned samples. *T.T. 2, p. 177-179.*

Petitioner's DNA, the victim's DNA and an unidentified individual's DNA was in a DNA mixture on a breast swabbing of the victim. *T.T. 2, pp. 181-182; 185.* Petitioner's DNA, the victim's DNA and an unidentified individual's DNA was in a DNA mixture on a swabbing of the victim's naval area. *T.T. 2, pp. 182-185.* Petitioner's DNA was the only DNA found on the knot binding the victim's ankles. *T.T. 2, pp. 185-186.*

Thereafter, five additional samples from the victim's bed and bedding were submitted for DNA analysis. *T.T. 2, pp. 187-188.* The DNA of the victim and one or more unknown third persons was found in a DNA mixture on the mattress top. *T.T. 2, pp. 188.* The victim's DNA and the DNA of an unidentified individual were found on the victim's comforter. *T.T. 2, pp. 189-190.* The victim's DNA and Richard Green's DNA was found on the victim's pillowcase. *T.T. 2, pp. 190-191.* The victim's DNA and Richard Green's DNA were found on two stains on the victim's fleece blanket. *T.T. 2, pp. 191-192.* The victim's DNA, Petitioner's DNA, and two other unknown contributors' DNA were found on another stain on the fleece blanket. *T.T. 2, p. 193.*

7

included oral and nasal swabs, and swabs of dried secretions found on Sawyer's breasts and her navel area for DNA analysis. *T.T. 2, pp. 67-68, 70; T.T. 3, pp. 29-30.* Of the DNA tested, only Petitioner's DNA was found on the victim's body. Petitioner's DNA was found on Sawyer's breasts and navel area. *T.T. 2, pp. 181-185.* Petitioner's DNA was found on semen stains on a fleece blanket from Sawyer's bed. *T.T. 2, pp. 187-188, 193; T.T. 3, p. 40.* Petitioner was a potential contributor to the DNA found on the knot of the binding around Sawyer's ankles. *T.T. 2, pp. 185-186.*

In addition to the DNA evidence, numerous additional items of evidence supported Petitioner's convictions. During autopsy, a bundled pair of Victoria's Secret panties was found stuffed in Sawyer's mouth. *T.T. 2, p. 61; T.T. 3, p. 32.* Petitioner's hand-print was on a Victoria's Secret bag found hanging on Sawyer's bedroom door. *T.T. 2, pp. 17, 43, 92, 94, 97.* The jury heard evidence that, following the murder, Petitioner told his girlfriend, Shekirah Curry, "I'll kill you like that retarded b---- Nikkia." *T.T. 3, pp. 140-141.* Also, Curry testified that Petitioner, who had teardrop tattoos underneath his eye, told Curry the significance of having a teardrop tattoo below the eye was, "To lose a loved one and if you kill somebody." *T.T. 3, pp. 141-142.* Curry reported Petitioner told her he thought about getting another teardrop tattoo. *T.T. 3, pp. 141-142.* In addition, recordings of multiple interviews of Petitioner by the police were played for the jury. The jury was able to view Petitioner's demeanor and behavior as he spoke with the police, and the jury heard multiple inconsistencies in Petitioner's explanations about his familiarity and relations with the victim. The jury, and subsequently, the Superior Court, found the evidence, as a whole, was sufficient to sustain the convictions.

For the same reasons, Petitioner has failed to demonstrate by a preponderance of the evidence the third prong of the ineffectiveness test, i.e., that the Petitioner was prejudiced by not submitting additional items for DNA analysis.

First, Petitioner's mere assertion that additional testing *could* have produced evidence of Petitioner's innocence, does not establish by a preponderance of the evidence prejudice from failure to submit additional items for DNA analysis.

Second, Petitioner fails to sufficiently establish prejudice, where the DNA evidence found at the scene was not limited to that of the victim and the Petitioner. As set forth above, the DNA of other persons *was* found at the scene. The DNA of third persons was found at the scene and evidence of this was presented to the jury. Yet, the jury found this evidence unconvincing. Petitioner fails to establish how any further DNA analysis would have been exculpatory. Evidence of DNA of third persons was already submitted to the jury.

Further, Petitioner fails to sufficiently establish prejudice from failure to submit additional items for DNA testing, where Petitioner's convictions were not based solely on DNA evidence. As previously discussed, additional evidence supported Petitioner's convictions as found by the Superior Court. Evidence of the Victoria's Secret panties in the victim's mouth; Petitioner's handprint on the Victoria's Secret bag found hanging on the victim's bedroom door; Petitioner's statements to his girlfriend, threatening to kill her like the victim; and Petitioner's statements about the significance of having a teardrop tattoo below his eye and his thought about getting another such tattoo, was presented to the jury. As additional evidence beyond DNA evidence supported the convictions, Petitioner cannot establish the third prong of the ineffectiveness of counsel test.

For the aforesaid reasons, Petitioner's ineffectiveness of counsel claim must fail.

9
9a

## CONCLUSION

For the reasons stated herein, Petitioner's Petition for Post-Conviction Relief Under the Post Conviction Relief Act shall be dismissed.

Petitioner is hereby put on notice that his Petition for Post-Conviction Relief Under the Post Conviction Relief Act will be dismissed after twenty (20) days from the date of this Notice. Within this same time period, Petitioner shall have the right to file any Objections to this Notice.

**BY THE COURT:**

**Daniel J. Brabender, Jr., Judge**

cc:  Michael E. Burns, Esq., Assistant District Attorney
Chris Rand Eyster, Esq., 304 Ross Street, Suite 400, Pittsburgh, PA 15219
James Duncan, ID No. LE-5688, P.O. Box 945, 286 Woodland Drive, Marienville, PA 16239  LEGAL MAIL

COMMONWEALTH OF PENNSYLVANIA   :   IN THE COURT OF COMMON PLEAS
                                       :   OF ERIE COUNTY, PENNSYLVANIA

                     v.                 :   CRIMINAL DIVISION

JAMES DUNCAN, PETITIONER        :   NO. 909 of 2012

## MEMORANDUM OPINION

This matter is before the Court on Petitioner's Motion for the Performance of Forensic DNA Testing on Crime Scene Evidence, and the Commonwealth's Answer to and Motion to Dismiss Petition For Post-Conviction Relief and Motion for Performance of Forensic DNA Testing.[1] For the reasons set forth below, the Petitioner's Motion must be denied.

## PROCEDURAL BACKGROUND

On July 16, 2013, after six days of testimony, a jury convicted Petitioner of Criminal Homicide/Murder, Aggravated Assault; Possessing Instruments of Crime; Recklessly Endangering Another Person; and Abuse of Corpse. On September 10, 2013, the Court sentenced Petitioner to an aggregate of 21 to 42 years of incarceration. Post-sentence motions were denied on September 20, 2013. On September 25, 2013, Petitioner filed a Notice of Appeal.

Petitioner raised for appellate review the following claims: there was insufficient evidence to support the convictions; the Trial Court abused its discretion in refusing to grant some of the Petitioner's requests for continuances; the Trial Court abused its discretion in permitting the jury to view Petitioner in handcuffs and shackles in a video played for the jury

---

[1] Concurrent with the filing of the instant Motion for the Performance of Forensic DNA Testing on Crime Scene Evidence, Petitioner filed a counseled Petition for Post-Conviction Relief under the Post Conviction Relief Act, 42 Pa.C.S.A. §9541 *et seq.* On February 22, 2016 the Court issued a Notice of Intent to Dismiss the PCRA motion.

1

during which Petitioner was interviewed by law enforcement; the Trial Court abused its discretion in permitting the jury to hear testimony from Petitioner's girlfriend that his teardrop tattoos meant he had killed someone, it was time to get another such tattoo, and he would kill his girlfriend; the Trial Court violated Petitioner's rights to due process and effective assistance of counsel during voir dire; and the evidence was insufficient to support the convictions.

On December 23, 2014, the Superior Court affirmed the judgment of sentence. *Commonwealth v. Duncan, 1548 WDA 2013 (Pa. Super. 2014)(unpublished memorandum).* Petitioner filed a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania which was denied on June 10, 2015.

On June 9, 2016, Petitioner timely filed a counseled Petition for Post-Conviction Relief Under the Post Conviction Relief Act, 42 Pa.C.S.A. §9541 *et seq.* Concurrently, Petitioner filed a Motion for the Performance of Forensic DNA Testing on Crime Scene Evidence. On July 12, 2016, the Commonwealth filed an Answer and Motion to Dismiss Petition for Post-Conviction Relief and Motion for Performance of Forensic DNA Testing. On February 22, 2016 the Court issued a Notice of Intent to Dismiss the PCRA motion.

## DISCUSSION

In the instant Motion for the Performance of Forensic DNA Testing on Crime Scene Evidence, Petitioner incorporated by reference the averments of the PCRA motion. In the PCRA, Petitioner claimed trial counsel was ineffective in failing to hire a DNA expert to analyze 36 out of 50 items retrieved from the crime scene that were not analyzed by the Commonwealth's DNA expert. Petitioner claimed that, "[h]ad such DNA testing been conducted, the results *could* have incriminated other individuals and proved Defendant's

2
12a

innocence." *Petition for Post-Conviction Relief Under the Post Conviction Relief Act, 42 Pa.C.S.A. §9541 et seq. (PCRA Motion), ¶9 (emphasis added).* Petitioner further claimed there was insufficient funding of expert services for Petitioner's defense to adequately challenge the Commonwealth's DNA evidence at trial, and the funding provided for defense experts "fell below constitutional standards" and entitles Petitioner to relief. *PCRA Motion, ¶10.*

In the instant Motion for the Performance of Forensic DNA Testing, Petitioner requests DNA testing on items obtained from the crime scene which did not undergo DNA testing by Commonwealth experts.[2] Petitioner asserts the identity of the perpetrator was at issue and "exculpatory DNA testing would establish the [Petitioner's] actual innocence of the offense." *Motion for the Performance of Forensic DNA Testing on Crime Scene Evidence (Motion for DNA Testing), ¶4.* Petitioner claims his constitutional rights were violated because he was provided with inadequate funds and expert assistance concerning the DNA testing of crime scene materials. *Motion for DNA Testing, ¶5.*

The convictions were for the brutal murder of a 27 year-old female, Nikkia Sawyer, whose mother found her dead, lying on her back in bed, nude and partially covered, with approximately 60 knife wounds over her body. *Trial Transcript, Day Three, July 12, 2013 ("T.T. 3"), p. 178; Trial Transcript, Day One, July 10, 2013 ("T.T. 1"), pp. 32-33; Trial Transcript, Day Two, July 11, 2013 ("T.T. 2"), pp. 72-117.* An autopsy revealed Sawyer died from multiple deep stab injuries to the chest. *T.T. 2, pp. 117, 122.*

A plethora of DNA evidence established Petitioner's culpability. Evidence introduced at trial established that Eric Vey, M.D., forensic pathologist, prepared a sexual assault kit which

---

[2] The evidence for which Petitioner seeks DNA testing includes vaginal swabs; blood under the fingernails; a hair in the victim's left hand; the Victoria's Secret panties found stuffed in the victim's mouth; a tan washcloth in the sink; blood in the sink; a towel on the bed; vaginal, rectal and oral swabs and smears; a nasal mucus sample; underwear from the apartment; a teddy bear; a purse; another Victoria's Secret bag; and a contact lens. *See Motion for the Performance of Forensic DNA Testing on Crime Scene Evidence, ¶3.*

3

13a

included oral and nasal swabs, and swabs of dried secretions found on Sawyer's breasts and her navel area for DNA analysis. *T.T. 2, pp. 67-68, 70; T.T. 3, pp. 29-30.* Of the DNA tested, only Petitioner's DNA was found on the victim's body. Petitioner's DNA was found on Sawyer's breasts and navel area. *T.T. 2, pp. 181-185.* Petitioner's DNA was found on semen stains on a fleece blanket from Sawyer's bed. *T.T. 2, pp. 187-188, 193; T.T. 3, p. 40.* Petitioner was a potential contributor to the DNA found on the knot of the binding around Sawyer's ankles. *T.T. 2, pp. 185-186.*

In addition to the DNA evidence, numerous additional items of evidence supported Petitioner's convictions. During autopsy, a bundled pair of Victoria's Secret panties was found stuffed in Sawyer's mouth. *T.T. 2, p. 61; T.T. 3, p. 32.* Petitioner's hand-print was on a Victoria's Secret bag found hanging on Sawyer's bedroom door. *T.T. 2, pp. 17, 43, 92, 94, 97.* The jury heard evidence that, following the murder, Petitioner told his girlfriend, Shekirah Curry, "I'll kill you like that retarded b---- Nikkia." *T.T. 3, pp. 140-141.* Also, Curry testified that Petitioner, who had teardrop tattoos underneath his eye, told Curry the significance of having a teardrop tattoo below the eye was, "To lose a loved one and if you kill somebody." *T.T. 3, pp. 141-142.* Curry reported Petitioner told her he thought about getting another teardrop tattoo. *T.T. 3, pp. 141-142.* In addition, recordings of multiple interviews of Petitioner by the police were played for the jury. The jury was able to view Petitioner's demeanor and behavior as he spoke with the police, and the jury heard multiple inconsistencies in Petitioner's explanations about his familiarity and relations with the victim. The jury, and subsequently, the Superior Court, found the evidence, as a whole, was sufficient to sustain the convictions.

The DNA of other persons *was* found at the scene, underwent DNA analysis, and was presented to the jury. Expert testimony concerning forensic DNA analysis of 23 items submitted

by the Pennsylvania State Police crime lab included the following. Alex Glessner, Ph.D., forensic DNA scientist for the Pennsylvania State Police, testified on the second day of trial. *T.T. 2, pp. 154-235.* Dr. Glessner initially received 18 items for DNA analysis and comparison. *T.T. 2, p. 168.* Four of these items were from four known individuals to establish standard references, or controls, for analysis of the other items. *T.T. 2, pp. 168-170.* The four initial DNA control samples were taken from the following: the victim, Richard L. Green, Ryan Green, and Bernard J. Przybyszewski. *T.T. 2, 7/11/13, pp. 168-170.* Later, Glessner received DNA samples from Richard Young and Petitioner to compare with questioned samples. *T.T. 2, p. 177-179.* The record is devoid of evidence of any other potential suspects whose DNA should have been obtained to establish standard references, or controls, for analysis of the other items.

Petitioner's DNA, the victim's DNA and an unidentified individual's DNA was in a DNA mixture on a breast swabbing of the victim. *T.T. 2, pp. 181-182; 185.* Petitioner's DNA, the victim's DNA and an unidentified individual's DNA was in a DNA mixture on a swabbing of the victim's naval area. *T.T. 2, pp. 182-185.* Petitioner's DNA was the only DNA found on the knot binding the victim's ankles. *T.T. 2, pp. 185-186.*

Thereafter, five additional samples from the victim's bed and bedding were submitted for DNA analysis. *T.T. 2, pp. 187-188.* The DNA of the victim and one or more unknown third persons was found in a DNA mixture on the mattress top. *T.T. 2, pp. 188.* The victim's DNA and the DNA of an unidentified individual were found on the victim's comforter. *T.T. 2, pp. 189-190.* The victim's DNA and Richard Green's DNA was found on the victim's pillowcase. *T.T. 2, pp. 190-191.* The victim's DNA and Richard Green's DNA were found on two stains on the victim's fleece blanket. *T.T. 2, pp. 191-192.* The victim's DNA, Petitioner's DNA, and two other unknown contributors' DNA were found on another stain on the fleece blanket. *T.T. 2, p.*

*193.* The jury concluded that the DNA evidence of known third persons and unidentified third persons at the scene was insufficient to create reasonable doubt of the Petitioner's guilt.

The record establishes the Trial Court approved all requests by Petitioner for expert funding concerning DNA evidence.

On January 17, 2013, trial counsel filed an Application for Funds for Forensic/DNA Expert, SciLaw Forensics, Ltd, requesting $1,500.00. *Application for Funds for Forensic/DNA Expert filed January 17, 2013, ¶4.* On January 17, 2013, the Court approved the request.

On January 25, 2013, trial counsel filed an Application for Funds for a Forensic Pathologist, Karl Williams, M.D., M.P.H, chief medical examiner, Allegheny County. On February 13, 2013, the Court approved the request for $3,500.00.

On March 18, 2013, Petitioner's trial counsel filed a Motion for Payment of Forensic Expert and Request for Additional Funding, concerning services of SciLawForensics, Ltd. On April 22, 2013, the Court granted the request for $700.00.

On June 12, 2013, trial counsel requested additional funding in the sum of $3,000.00 for SciLawForensics, Ltd. On June 12, 2013, the Court granted the request.

There were no motions concerning DNA analysis filed by Petitioner which were refused by the Court.[3]

## LEGAL STANDARDS AND CONCLUSIONS

In any motion for postconviction DNA testing pursuant to 42 Pa.C.S.A. §9543.1, the Petitioner shall present a prima facie case demonstrating that the DNA testing of the specific evidence, assuming exculpatory results, would establish the Petitioner's actual innocence of the

---

[3] Petitioner's claims concerning the adequacy of defense funding are addressed in the Notice of Intent to Dismiss the Petitioner's PCRA Motion. The Notice of Intent to Dismiss was filed February 22, 2017.

offenses for which the Petitioner was convicted. *42 Pa.C.S.A. §9543.1(c)(3)(ii)(A).* The Court shall order postconviction DNA testing "upon a determination, after review of the record of the [Petitioner's] trial", that, *inter alia,* the requirements of 42 Pa.C.S.A. §9543.1(c) have been met. *42 Pa.C.S.A. §9543.1(d).* The court shall not order postconviction DNA testing,

> if, after review of the record of the [Petitioner's] trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:
>
> (i)     would establish the [Petitioner's] actual innocence of the offense for which the [Petitioner] was convicted;
>
>   . . .

*42 Pa.C.S.A. §9543.1(d)(2)(i).*

Petitioner's unsupported claims that further DNA testing would prove his innocence must fail. First, as discussed above, a plethora of DNA evidence established Petitioner's culpability. Second, in addition to DNA evidence, numerous additional items of evidence concerning the Petitioner supported the convictions. Third, the DNA evidence of third persons other than the Petitioner and the victim was found at the scene of the crime, and this evidence was submitted to the jury. Even though the jury was presented with evidence third persons were present in the victim's apartment, the jury found the evidence implicating the Petitioner was sufficient to convict. The Superior Court agreed.

Moreover, Petitioner's bald assertion that DNA testing of untested items would establish Petitioner's actual innocence of the offenses is premised upon speculation, and thus, must fail. Petitioner's unsupported claim that DNA testing of additional items will prove his innocence is based upon the premise that DNA testing of additional items would reveal the absence of Petitioner's DNA from the items. This premise is entirely speculative. Further, in the face of such speculation, the absence of Petitioner's DNA could not be meaningful and could not

7

17a

establish his actual innocence. *See Commonwealth v. Smith,* 889 A.2d 582, 586 (Pa. Super. 2005). Merely detecting DNA from another individual on the items not tested for DNA, in the absence of evidence as to how and when the DNA was deposited, would not exculpate Petitioner by pointing to a different assailant. *See Commonwealth v. Smith,* 889 A.2d at 586.

The statute authorizing postconviction DNA testing does not contemplate this type of speculative argument; "rather it requires a *prima facie* case that the DNA results, if exculpatory, *would establish [Petitioner's] actual innocence."* *Commonwealth v. Smith,* 889 A.2d at 586. (emphasis added).

As set forth herein, after review of the record, and based upon the evidence adduced at trial, there is no reasonable probability that additional DNA testing would produce exculpatory evidence that would establish Petitioner's actual innocence of the offences for which he was convicted. Petitioner has not met his burden of proof.

## CONCLUSION

For the above reasons, the Motion for the Performance of Forensic DNA Testing on Crime Scene Evidence shall be denied.

BY THE COURT:

Daniel J. Brabender, Jr., Judge

cc:   Michael E. Burns, Esq., Assistant District Attorney
      Chris Rand Eyster, Esq., 304 Ross Street, Suite 400, Pittsburgh, PA 15219
      James Duncan, ID No. LE-5688, SCI Forest, P.O. Box 945, 286 Woodland Drive, Marienville, PA 16239   LEGAL MAIL

8
18a